IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| KENNETH HENRY, | § | |
| --- | --- | --- |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:18-CV-01086-N |
| | § | |
| SPECTRUM L.L.C. AND CHARTER | § | |
| COMMUNICATIONS, L.L.C. f/d/b/a | § | |
| TIME WARNER CABLE TEXAS, L.L.C., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion and Order addresses Defendant Time Warner Cable Texas, L.L.C.'s ("Time Warner") motion for summary judgment [17]. Because Time Warner terminated Henry after he got in an avoidable and severe accident, the Court grants Time Warner's motion.

### **I. ORIGINS OF THE DISPUTE**

Kenneth Henry began his employment with Time Warner in 1992. In May 2015, he was working as a maintenance technician. That job required him to drive a company truck to local residences to install and troubleshoot cable services. On May 29, 2015, Henry was driving the company truck and got in an accident. According to the police report, Henry collided with another vehicle after running a red light. Henry and the company truck careened onto a nearby sidewalk, took out a parking meter, and came to a stop by crashing into a light pole. The occupants of the other vehicle were severely injured and required

prolonged hospitalization. Henry was hospitalized for an injury to his back. Both vehicles were totaled.

Henry maintains that he cannot remember the moments preceding the collision because he blacked out after suffering a bout of hypoglycemia. He states that he has been an insulin dependent diabetic for over fifteen years, and that he was experiencing symptoms associated with a low blood sugar shortly before the accident.

In accordance with its internal policies, Time Warner formed an Accident Review Committee ("ARC") to investigate the accident. After weeks of deliberation, the ARC determined that the accident was avoidable in nature because Henry ran a red light. Henry's manager, and various representatives of Time Warner's Human Resources Department, including Vickie Legros, then held a series of meetings to review the ARC's findings and determine what disciplinary action was necessary. Ultimately, the severity and avoidable nature of the accident persuaded the group to terminate Henry.

Henry filed a charge with the E.E.O.C. on October 13, 2015. After receiving a right to sue letter, he filed suit in this Court alleging discrimination, retaliation, and failure to accommodate under the Americans with Disabilities Act ("ADA"), and workers' compensation retaliation under Chapter 451 of the Texas Labor Code. This Court previously dismissed Henry's retaliation and failure to accommodate claims under the ADA. March 6, 2019 Order [56]. Time Warner now moves for summary judgment as to Henry's remaining ADA discrimination and Chapter 451 retaliation claims.

## II. LEGAL STANDARD FOR SUMMARY JUDGMENT

Courts "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In making this determination, courts must view all evidence and draw all reasonable inferences in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The moving party bears the initial burden of informing the court of the basis for its belief that there is no genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made the required showing, the burden shifts to the nonmovant to establish that there is a genuine issue of material fact such that a reasonable jury might return a verdict in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Factual controversies are resolved in favor of the nonmoving party "'only when an actual controversy exists, that is, when both parties have submitted evidence of contradictory facts.'" *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 525 (5th Cir. 1999) (quoting *McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995)).

### III. THE COURT GRANTS SUMMARY JUDGMENT FOR TIME WARNER ON HENRY'S ADA DISCRIMINATION CLAIMS

#### *A. Legal Standard Under the ADA*

Much like in Title VII cases, ADA claimants may use either direct or circumstantial evidence to prove discrimination. *Rodriguez v. Eli Lilly & Co.*, 820 F.3d 759, 764 (5th Cir. 2016) (citing *E.E.O.C. v. LHC Group, Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)). "Direct evidence proves intentional discrimination without inference or presumption when believed by the trier of fact." *Jones v. Overnite Trans. Co.*, 212 F. App'x. 268, 272 (5th Cir. 2002). "In such direct evidence cases, 'the burden of proof shifts to the employer to establish by a preponderance of the evidence that the same decision would have been made regardless of the forbidden factor.'" *Agoh v. Hyatt Corp.*, 992 F. Supp. 2d 722, 732 (5th Cir. 2014) (citing *Fierros v. Texas Dept. of Health*, 274 F.3d 187, 192 (5th Cir. 2001)).

In contrast, use of circumstantial evidence triggers the three-step review framework articulated in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *Id*. at 732. First, Henry must establish a prima facie case of disability based discrimination. *McDonnell Douglass*, 411 U.S. at 802. This requires him to show: (1) he had a disability, (2) he was qualified for the job, and (3) there was a causal connection between his disability and his termination. *Rodriguez*, 820 F.3d at 765. Next, the burden shifts to Time Warner to "articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Finally, the burden returns to Henry to show that a reasonable jury could conclude that Time Warner's reasons for terminating Henry were mere pretext. *Id.*

#### *B. Henry Has Not Proved Discrimination by Direct Evidence*

Henry points to three potential pieces of direct evidence: (1) the fact that he was terminated because he was in an accident caused by his diabetes; (2) the fact that Time Warner failed to give him short-term disability benefits; and (3) the fact that Time Warner thought he was a "direct threat" because of his diabetes. Pl.'s Br. in Resp. to Def.'s Mot. for Summ. J., 23-24 [31] ("Resp."). But none of these alleged facts establish "intentional discrimination without inference or presumption when believed by the trier of fact." *Jones*, 212 F. App'x. at 272.

First, even assuming that the accident was in fact caused by Henry's diabetes,[1] Time Warner has shown by preponderance of the evidence that the termination would have been made even if Henry did not have diabetes. The ARC's report and the deposition testimony of the decision makers make clear that Henry was terminated because of the severity and avoidable nature of the accident. Def.'s Br. in Supp. of Mot. for Summ. J., 7 [17] ("Mot."). There is no evidence in the record that Henry's diabetes was ever a factor in the calculus.

Second, the fact that Henry did not receive short-term disability benefits does not "show[] a discriminatory motive on its face." *Fierros*, 274 F.3d at 195. Henry makes no showing that he ever applied or was eligible for these benefits, or that the decision makers involved in his termination had the discretion to provide him with these benefits.

Finally, Henry's "direct threat" argument also fails. At no point do the notes that he bases this theory on even hint that Time Warner considered Henry a direct threat. Far from

---

[1] This is quite a favorable assumption considering that Henry concedes that his blood sugar levels were normal immediately following the collision. Resp. at 10.

evidencing discrimination on its face, reaching that conclusion from the notes would require several favorable presumptions and inferences. The notes therefore do not qualify as direct evidence of discrimination.

### *C. Henry Has Not Proved Discrimination Under McDonnell Douglas*

Henry has met the initial burden of establishing a prima facie case of discrimination. A reasonable jury could find that he had a disability and that he was qualified for his position based on his medical and employment history. And while it is much less clear whether there is any causal connection between his disability and termination, the Court holds that after assuming all facts in his favor, a reasonable jury could find that he meets this preliminary hurdle.

But Henry cannot show that Time Warner's nondiscriminatory reason — that it terminated Henry because he got into an avoidable and severe accident — is mere pretext. Henry points to two aspects in the record in hopes of establishing pretext: (1) inconsistent explanations regarding his termination, and (2) Time Warner's departure from its disciplinary policy. The Court disagrees with both theories.

While there is some legal basis for inferring pretext from inconsistent explanations, it does not apply here. The inconsistencies have to be severe and reveal that the explanations lack a single common thread. *Compare Caldwell v. KHOU—TV*, 850 F.3d 237 (5th Cir. 2017), *and Gee v. Principi*, 289 F.3d 342, 347-48 (5th Cir. 2017), *with Bhadauria v. HCL America, Inc.*, 2019 WL 426478 (N.D. Tex. Feb. 4, 2019). The inconsistencies that Henry identifies mainly concern the timing of the termination, and the people primarily involved

in making the final decision. Resp. at 36-37. The challenges have nothing to do with Time Warner's substantive explanation, and thus fall well short of the standard required to infer pretext under current law.

The Court also disagrees with Henry's theory regarding Time Warner's disciplinary policies. Henry argues that Time Warner's disciplinary policy for employee accidents is progressive, recommending that an employee first receive a warning and then face subsequent remedial measures like safety training and reassignment before being terminated. Resp. at 33-34. He theorizes that Time Warner's decision to skip straight to terminating Henry was a departure from policy sufficient to create an inference of pretext. But the policy Henry cites also states that "[t]he severity [of the accident] could warrant an acceleration of the disciplinary process up to and including immediate termination." *Id*. at 33. This is precisely what happened: Time Warner decided that the particularly severe nature of this accident warranted immediate termination. Accordingly, the Court holds that no reasonable jury could find that Time Warner departed from its internal policies in a way sufficient to create an inference of pretext.

In sum, Henry cannot show either direct or circumstantial evidence of disability discrimination. That the parties dispute whether Henry's diabetes was in fact the cause of the accident is irrelevant. Time Warner alleges that Henry's condition was never a factor in its decision, and Henry produces no evidence to create a reasonable inference that it was. The Court thus grants summary judgment to Time Warner as to Henry's ADA discrimination claim.

## IV. THE COURT GRANTS SUMMARY JUDGMENT FOR TIME WARNER ON HENRY'S CHAPTER 451 CLAIM

To establish a workers' compensation retaliation claim under Chapter 451 of the Texas Labor Code, Henry must show that "the employer's action would not have occurred when it did had the employee's protected conduct — filing a workers' compensation claim — not occurred." *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2006). Courts have held that plaintiffs may establish this causal link through various types of circumstantial evidence. *Kingsaire, Inc. v. Melendez*, 477 S.W.3d 309, 312 (Tex. 2015).

Henry's attempt to show this causal connection fails. Henry cites no statements made by any of the decision makers that signal a negative attitude toward his condition. He also and has not identified any similarly situated individuals that were treated differently. Instead, he relies on the same arguments regarding Time Warner's disciplinary policy and explanations that the Court addressed and rejected above. The only other argument he makes is based on Time Warner failing to place him in a nondriving or light duty role following his release from the hospital.[2] Resp. at 29-30. But this too falls short of establishing the requisite causal connection. Henry offers no evidence rebutting Time Warner's documentation that there was no light duty work available when he was released, and has

---

[2] In an unopposed motion, Henry also argues that Time Warner knew he hired a workers' compensation lawyer in light of one portion of Legros' notes, in which she writes: "Should I bring an attorney? KH [Henry] asked MR [Henry's supervisor] about this B4 ARB [Accident Review Board]." Pl.'s Unopposed Mot. to Supp. the Summ J. R., Ex. 1 [34-1]. Henry argues this qualifies as direct evidence of retaliation. The Court disagrees. Even assuming this note implies that Time Warner knew Henry hired a lawyer, it does not create a reasonable inference that Time Warner retaliated against Henry for acquiring counsel.

failed to identify any similarly situated individuals that were granted alternative employment.

In short, he has not given the Court any evidence suggesting that he would have been treated differently but for his decision to file for workers' compensation. In fact, Henry conceded the point in his deposition, answering "No, ma'am" when asked if he believed his termination had anything to do with the fact that he filed a workers' compensation claim. Appx. to Def.'s Br. in Supp. of its Mot. for Summ J., 28 [19]. Accordingly, the Court grants summary judgment to Time Warner and dismisses Henry's Chapter 451 claim.

## CONCLUSION

For the reasons stated above, the Court grants Time Warner's motion for summary judgment.

Signed March 19, 2019.

_David C. Godbey_
David C. Godbey
United States District Judge